William L. Gavras, Esq.
LAW OFFICES OF WILLIAM L. GAVRAS
A Professional Corporation
2nd Floor, J & R Building
208 Route 4
Hagåtña, Guam 96910
Telephone: 472-2302
Facsimile: 472-2342

Attorney for Defendant
OK PARK

**FILED**
DISTRICT COURT OF GUAM

OCT 1 9 2007

JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 03-00058 |
| Plaintiff, | |
| vs. | DEFENDANT'S REPLY TO UNITED STATES RESPONSE TO DEFENDANT'S 2255 PETITION |
| OK PARK, | |
| Defendant. | |

**COMES NOW** Defendant, by and through counsel, and for her Reply to the United States Response To Defendant's 2255 Petition states as follows:

The Government's posits that Mrs. Park knew *before* she filed her Motion For Bail Pending Appeal that the sentencing court ordered her to self-surrender within ten days of the date the Bureau of Prisons designated a facility at which she was to be confined. This much is true. However, from this the Government erroneously leaps to the conclusion that Mrs. Park knew when to turn herself in *after* the Ninth Circuit denied her motion. The Government ignores the fact that upon filing the motion Mrs. Park's bail was extended automatically by the

provisions contained in Ninth Circuit Rule 9-1.2(e), which required that her bail remain in effect until the motion was ruled upon. The extension made it impossible for her to self-surrender pursuant to the sentencing court's order as the extension carried her bail past the ten day window of time the court ordered her to self-surrender. Simply put, because of the motion filed in the Ninth Circuit and the inevitable delay in having it ruled upon, when the motion was denied, there no longer existed an order giving Mrs. Park a date in the future on which to self-surrender.

For a defendant willing to self-surrender, there remains the practical necessity that the defendant know when to do so.[1] As between the defendant and the Government, the onus is on the United States Department of Justice and its various branches to establish the date to self-surrender. See, United States v. Martinez, 837 F.2d 861, 866 (9th Cir. 1988)(*discussing* a credit for time at liberty case in which the court stated: "just as a defendant has no duty to bring himself to trial, he has no affirmative duty to aid in the execution of his sentence.").

---

[1] This proposition is self-evident because the entire point of self-surrendering is that it the defendant is not taken into custody immediately. However, there are also bureaucratic reasons as well. The Department of Justice states that self-surrender dates "should be established as close to the class start date as is practicable." See *infra*. The BOP apparently has an orientation program for inmates, and it does not want defendants confined at the institution any longer than necessary before orientation begins. It will also be remembered that there were statements by the Marshals at Mrs. Park's initial hearing on August 30, 2007 that they did not order her to self-surrender immediately upon realizing she should have been in custody, but rather ordered her to do so at a *future* date.

In further support of the proposition that the onus is on the Government to establish a date to self-surrender, a Change Notice dated May 19, 1999, the Department of Justice issued the following rule:

> 5.1.3. **Voluntary Surrenders**
>
> The courts allow some inmates to surrender voluntarily to designated facilities. If the court does not establish a date, the CCM shall contact the USMS to establish a surrender date. If the USMS does not establish a date, the CCM may do so. When the CCM becomes aware of a change in a date of voluntary surrender, he or she shall notify the regional designator and the Inmate Systems Manager (ISM) at the designated institution via BOPNet. . . . . Documentation of this notification must be maintained until the voluntary surrender has occurred. . . . Self surrender dates for ICC designations should be established as close to the class start date as is practicable.

See Exhibit A.[2] The USMS was aware that the date set by the sentencing court for Mrs. Park to self-surrender was vacated by the Ninth Circuit. Thereafter, there was no established date. The USMS should have established a date.

The sentencing court's original order stated that Mrs. Park was to turn herself in within ten days of being designated to a BOP facility. Such designation occurred in early January 2005. The Ninth Circuit did not deny the motion for bail on appeal until February 9 and it was not received until approximately February 14. Accordingly, as of mid January 2005, no date for self-surrender existed. Mrs. Park could not surrender until August 30, 2007 after having received notice to do so from the Marshals in late July/early August 2007. In the interim, Mrs. Park obeyed with every order and request made and other than being willing to

---

[2] Retrieved from http://www.bop.gov//policy/progstat/7300_009.pdf on October 15, 2007.

self-surrender, she was under no obligation to insist that a date for self-surrender be given. See, United States v. Martinez, 837 F.2d at 866 (9th Cir. 1988).

Mrs. Park had no obligation to break into prison especially as she was already reporting to federal authorities many times each month in person and by phone at the very building where she would be taken into custody. In no way can it be said she was negligent unless one impermissibly puts on her the same duties the Government is charged with in securing her imprisonment.

The Government argues that it was only negligent in not issuing a warrant for Mrs. Park's arrest. The Government makes this claim in an attempt to add color to and buttress its suggestion that Mrs. Park is somehow at fault because she was recalcitrant. This argument is belied by the fact that upon being ordered by the USMS to self-surrender, Mrs. Park presented herself to this Court, and the brute force the Government says was necessary was not needed. By stating that a warrant of arrest was needed, the Government attempts to sidestep the historical fact that all that was needed was to inform Mrs. Park of a date to surrender.

The Government's hands are not clean and such a determination is the test to determine of a defendant is entitled to credit for time at liberty. The Government attempts to turn this test upside down and states that the test should not be whether the Government was negligent but whether Mrs. Park was at all at fault. Mrs. Park is not at fault as she was neither negligent nor did she commit an act of culpable omission by not breaking into prison. However, this is not the

analysis. The proper test is outlined in <u>United States v. Vega</u>, 2007 WL1989362 (3rd Cir. 2007). There the court stated:

> Nearly every court to have considered the rule of credit for time at liberty has required that the government's actions in releasing or failing to incarcerate the prisoner be negligent. <u>See id</u>. at 235; <u>Green,</u> 732 F.2d at 1400; <u>United States v. Croft, 450 F.2d 1094, 1097 (6th Cir.1971)</u>; <u>Gillman v. Saxby,</u> 392 F.Supp. 1070, 1073 <u>(D.Haw.1975)</u>; <u>Derrer v. Anthony, 265 Ga. 892, 463 S.E.2d 690,</u> 693 (1995). We, therefore, have little difficulty joining these courts and finding that habeas relief is inappropriate where the government's hands are *entirely clean*. However, even simple negligence, rather than the gross negligence suggested by the Government, can defeat a claim of clean hands.

<u>Vega</u> 2007 WL 1989362 at 8 (emphasis added). In the instant case, based on the facts and the admissions by the Government, it cannot be said that the Government's hands are "entirely clean."

                                       Respectfully submitted,

                                       LAW OFFICES OF WILLIAM L. GAVRAS

Dated: October 19, 2007.  By: _____
                                       WILLIAM L. GAVRAS, ESQ.
                                       Attorney for Defendant
                                       OK PARK

## CERTIFICATE OF SERVICE

I certify that I will cause to be served upon the Office of the United States Attorney, a true and correct copy of this document on or before October 19, 2007.

Respectfully submitted,

LAW OFFICES OF WILLIAM L. GAVRAS

Dated: October 19, 2007.   By: _____
WILLIAM L. GAVRAS, ESQ.
Attorney for Defendant
OK PARK



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE AFFECTED:** 7300.09
**CHANGE NOTICE NUMBER:** 02
**DATE:** 5/19/99

1. **PURPOSE AND SCOPE.** To add sections on the Cost of Incarceration Fee, Sexual Abuse/Assault Prevention and Intervention, and Volunteer Use in Community-Based Programs as well as to add the Tracking Juvenile Designations form to Chapter 5 of the Community Corrections Manual and to make a variety of other more minor changes to Chapters 5 and 6 as detailed below.

2. **SUMMARY OF CHANGES IN CHAPTER 5**

   a. In both Chapters 5 and 6, changes have been made in accordance with the Bureau's clear writing initiative. Increased use of BOPNet GroupWise system for making official notifications has also been added throughout this change notice.

   b. In section 5.1, paragraph 6, a designation is not done when requested by the U.S. Marshals Service if the sentence has been completed.

   c. In section 5.1, paragraph 9, during the designation process, prior sentence computations are to be reviewed along with the 129s and Presentence Investigations.

   d. In section 5.1, paragraph 12, if background information has not been completed, the inmate must be designated to at least a LOW security facility.

   e. In section 5.1.2, community corrections staff must obtain a verbal report related to offense conduct and institutional adjustment from a state employee on state inmates being designated for service of a federal sentence.

   f. In sections 5.1.3 and 5.1.4, directions on maintaining documentation regarding voluntary surrenders and appeals were

### 5.1.2. Early Designation for Inmates in State Custody

When prisoners are within 30 days of release from state sentences and a federal term of incarceration is to follow, community corrections staff shall act upon requests for designations from the USMS. Community corrections staff shall contact a state employee for a verbal report on the inmate's offense conduct and institutional adjustment (to include incident report history) as it applies to the designation process. They must also confirm the scheduled release date before requesting designation. The USMS must provide documentation verifying the sentence is complete.

For procedures to follow for inmates with concurrent federal and state sentences, refer to the Program Statement on **Designation of State Institution for Service of Federal Sentence**.

### 5.1.3. Voluntary Surrenders

The courts allow some inmates to surrender voluntarily to designated facilities. If the court does not establish a date, the CCM shall contact the USMS to establish a surrender date. If the USMS does not establish a date, the CCM may do so. When the CCM becomes aware of a change in a date of voluntary surrender, he or she shall notify the regional designator and the Inmate Systems Manager (ISM) at the designated institution via BOPNet. Contract facilities shall be notified of surrender date changes by telephone or mail. Documentation of this notification must be maintained until the voluntary surrender has occurred. This documentation may be maintained by saving the BOPNet message in an electronic file, by a comment in the designation log, or another method the CCM deems appropriate. Self surrender dates for ICC designations should be established as close to the class start date as is practicable. For further information, refer to the Program Statement on **Unescorted Transfers and Voluntary Surrenders** and, in the case of voluntary surrender to an ICC, the **Intensive Confinement Center** Program Statement.

### 5.1.4. Appeals

If a CCM becomes aware that an inmate has been released on an appeal after an institution was designated for that inmate, the CCM shall notify the regional designator and the ISM at the designated federal institution by BOPNet. If a contract facility is the inmate's designated location, the CCM shall notify staff at that facility. Documentation of notification must be maintained until the appeal process is completed. The documentation may be noted in an electronic file or another CCM approved method.